**PAUL J. HETZNECKER, ESQUIRE**
Attorney I.D. No. 49990
1420 Walnut Street, Suite 911
Philadelphia, PA 19102
(215) 893-9640                                    **Attorney for Plaintiff, Alfonse Bowman**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALFONSE BOWMAN** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 22-2037** |
| | : | |
| v. | : | |
| | : | |
| **CITY OF PHILADELPHIA, et al.** | : | |
| *Defendants* | : | |
| | : | |

**PLAINTIFF'S MOTION TO COMPEL APPLICATION OF THE FACIAL RECOGNITION PROGRAM UTILIZED BY PHILADELPHIA POLICE TO IDENTIFY DEFENDANT POLICE OFFICER JOHN DOE I**

**TO THE HONORABLE NITZA I. QUIÑONES ALEJANDRO, JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA, PHILADELPHIA:**

Plaintiff, Alfonse Bowman, hereby files the within Motion to Compel Application of the Facial Recognition Program Utilized by Philadelphia Police to Identify Defendant Police Officer John Doe I and submits the following in support thereof:

1. On May 25, 2022, Plaintiff filed a complaint against the City of Philadelphia and two John Doe Police Officers alleging civil rights violations.

2. The complaint stems from an incident on October 27, 2020, in which Alfonse Bowman, a student at Morehouse College who was visiting his parents in West Philadelphia, was

1

struck in the face with a metal asp through an open backseat passenger window by Philadelphia Police Officer John Doe I.

3. Immediately following the assault, Plaintiff and his two friends who had witnessed the event, informed Defendant Sergeant John Doe II of the assault, who advised them that there was nothing he could do about it and refused to take a report or call for medical assistance for the Plaintiff.

4. The Plaintiff suffered severe permanent injuries to his face. Plaintiff sought emergency medical treatment at Abington Hospital, and following an examination in the emergency room, the Plaintiff was diagnosed with an acute fracture through the left inferior orbital rim and floor, lamina papyracea, anterior walls of the left maxillary antrum and bilateral nasal bones. The Plaintiff underwent two separate surgical procedures to reconstruct his face.

5. On January 18, 2021, the Plaintiff was interviewed by telephone, with Counsel on the line, by a Lieutenant assigned to the Internal Affairs Division of the Philadelphia Police Department. Essential to the Internal Affairs investigation was establishing the identity of the police officer responsible for this unprovoked attack. Within days of the interview Plaintiff's Counsel provided the Internal Affairs investigator a video of the incident taken by Plaintiff's friend.

6. On May 3, 2021, Counsel wrote to the assigned Internal Affairs Officer requesting an update regarding his investigation into the incident, including the effort to identify the police officer responsible for the use of excessive force on the Plaintiff. In order to assist the Internal Affairs investigator's effort to identify the police officer, Counsel for Plaintiff provided still photos from the video to the assigned Internal Affairs investigator on June 16, 2021,.

7. Eight months went by without any report from Internal Affairs regarding the status of the investigation. On March 14, 2022, Counsel for the Plaintiff wrote to the Internal Affairs investigator requesting an update on his investigation. On March 15, 2022 the investigator responded by confirming that the investigation was still ongoing.

8. On May 25, 2022, the instant case was filed in the United States District Court for the Eastern District of Pennsylvania against a Defendant Philadelphia Police Officer John Doe I and Philadelphia Police supervisor John Doe II, as well as the City of Philadelphia.

9. The day after the complaint was filed, May 26, 2022, Plaintiff's Counsel received a phone call from the Internal Affairs Investigator requesting a follow up meeting with the Plaintiff.

10. On July 8, 2022, a follow up interview of the Plaintiff was conducted by the Internal Affairs investigator. During that meeting, and the correspondence following the meeting, Plaintiff's Counsel requested that the Internal Affairs investigator apply the facial recognition software program utilized by the Philadelphia Police Department to identify suspects, to their database of photographs of Philadelphia Police officers in order to identify the Defendant Philadelphia Police Officer John Doe I, the officer responsible for the excessive use of force against the Plaintiff.

11. On August 15, 2022, Plaintiff's Counsel sent disclosures to Counsel for the Defendant City of Philadelphia which included the video of the incident, as well hundreds of still photographs taken from the video. This evidence was sent along with the Plaintiff's First Request for Production of Documents and a cover letter. (Exhibit 1, 2022-08-15 Letter to Bailey Axe, Esq. ) As indicated in the cover letter, Plaintiff's Counsel provided still photographs

extracted from the video which depicts several officers including Defendant Philadelphia Police Officer John Doe I.

12. The faces of two police officers appear in the video during the incident. There are two methods of investigation that could be utilized in order to identify Defendant Police Officer John Doe I.

13. The first method of investigation would be to apply the facial recognition program to the still photographs extracted from the video against the database of Philadelphia Police officers in order to directly identify Defendant Police Officer John Doe I.

14. The second method of investigation would be to identify the supervisor/sergeant who appears in the video. The sergeant looks directly into the camera while Plaintiff's friend is videotaping the incident. The facial recognition program used by Philadelphia Police to identify suspects could be used by applying the program to the still photos extracted from the video against the photo database of Philadelphia Police supervisors in order to identify the supervisor of Defendant Police Officer John Doe I.  Once the sergeant is identified through the application of the facial recognition program, the sergeant could then be deposed and asked to identify Defendant Police Officer John Doe I, who was under his command that evening.

15. On December 12, 2022, Counsel sent a letter to Deputy City Solicitor Bailey Axe requesting that the facial recognition software also be applied to the sergeant whose face was captured on video for the purpose of identifying Defendant Police Officer John Doe I who was under his command on the night of the attack. (Exhibit 2, 2022-12-12 Letter to Bailey Axe, Esq.)

16. On December 15, 2022, Deputy City Solicitor Bailey Axe provided Plaintiff's Counsel with almost 1,700 pages of discovery which included the names of hundreds of

Philadelphia Police officers that were assigned to respond to the protests in West Philadelphia arising from the police involved shooting of Walter Wallace.

17.     Counsel for the Defendant City of Philadelphia, Deputy City Solicitor Bailey Axe, reached out to the Philadelphia Police Department on several occasions in order to find out if they had established a method to identify the Defendant Philadelphia Police Officer John Doe I.

18.     Deputy City Solicitor Bailey Axe has acted in good faith and endeavored to assist in Counsel's effort to identify the Defendant Philadelphia Police Officer John Doe I responsible for the assault on Plaintiff.

## BACKGROUND ON PHILADELPHIA POLICE USE OF FACIAL RECOGNTION PROGRAMS

19.  Although a common tool used by law enforcement by state, local and federal law enforcement agencies, Plaintiff recognizes that facial recognition programs are inherently flawed.  According to the Government Accountability Office (GAO) in 2021, half of the federal law enforcement agencies use facial recognition programs. In 2016, Georgetown Law researchers estimated that one out of every four state and local law enforcement agencies had access to facial recognition programs for investigations.

20.     In 2020, following privacy and ethical concerns arising out of the protests calling for racial justice following the murder of George Floyd, many companies pledged to either temporarily suspend or permanently stop selling facial recognition technologies to law enforcement agencies. It is important to note that while mass surveillance technologies threaten our individual right to privacy and collective freedom, facial recognition programs have become

extremely popular among law enforcement agencies throughout the country. Equally important is the evidence of racial disparities that exist when applying facial recognition programs, which has been well documented.

21. In 2018, researchers at the Massachusetts Institute of Technology (MIT), published an analysis of several commercial algorithms concluding that significant racial bias exists in the application of facial recognition programs. The research demonstrated that the error rate in identifying black folks was between 20.8% and 34.7%, whereas the error rate for white men was between 0.0% and 0.8%.

22. In addition, the National Institutes of Standards and Technology (NIST) published a 2019 study of 189 commercial facial recognition programs finding that facial recognition programs developed in the United States were significantly more like to return false positives or negatives for Black, Asian and Native American individuals compared to white individuals. https://www.brookings.edu/research/police-surveillance-and-facial-recognition-why-data-privacy-is-an-imperative-for-communities-of-color/

23. The Philadelphia Police Department has access to more than 1,800 surveillance cameras through the Delaware Valley Intelligence Center, (DVIC, as known as a Fusion center). The Fusion center, run by the Philadelphia Police Department and the Department of Homeland Security, is a repository for information gathered through surveillance technology. DVIC coordinates the intelligence gathering and dissemination with state and federal intelligence agencies. One of the investigative techniques utilized by Philadelphia Police has been a facial recognition program. Photographs from Pennsylvania driver's licenses and state identifications are fed into the state's law enforcement database, JNET, which operates a facial recognition

system called JFRS.

24. The Pennsylvania Justice Network (JNET) manages the facial recognition system used by police departments throughout Pennsylvania. The system is owned by the Chiefs of Police Association. The system launched in 2006. In 2013, the JNET was provided access to the Pennsylvania driver's license photo database. JNET has access to millions of driver's licenses and state identification photographs. JNET has not made its policy regarding the use of facial recognition software available to the public.

https://www.perpetuallineup.org/jurisdiction/pennsylvania#:~:text=JNET%20has%20not%20made%20its,searches%20of%20witnesses%20(010845).

25. While it is clear that law enforcement's use of facial recognition programs to investigate crime is racially biased against black folks, it is also clear from these studies that they appear to be more accurate with respect to white folks. This is a direct result of the inherent racial bias of the programmers. However, according to the Plaintiff, his witnesses and the video taken at the time of the assault on the Plaintiff, Defendant Police Officer John Doe I is white. Therefore, applying the facial recognition program available to the Philadelphia Police Department through JNET would likely reflect a more accurate conclusion regarding the identity of the Defendant Police Officer John Doe I, and therefore would be an effective method of identifying the officer responsible for this brutal assault.

26. In addition, the Philadelphia Police Department retains photos of its police officers and therefore, the database subject to a prospective search using facial recognition software is accessible and relatively small.

27. Finally, any objection made by the Philadelphia Police Department to utilize the

facial recognition program on its own officers is nullified by the criminal nature of the assault and the Police Department's duty to investigate criminal conduct, including its own officers.

28. On April 3, 2023, the Deputy City Solicitor Bailey Axe informed Counsel for the Plaintiff that the Police Department would not apply the facial recognition software utilized for the purpose of identifying criminal suspects to their own officers. The Police Department claims that the software belongs to the Pennsylvania Police Chief Association and the Philadelphia Police Department accesses the facial recognition software through the State Police JNET system. According to the Police Department's Directive 5.32, "any use [of the facial recognition program] for non-law enforcement is not permitted."

29. Plaintiff has not been able to access Directive 5.32 as it appears this directive is not available to the public.

30. However, even without the Directive 5.32 available for review, Plaintiff's request is precisely for law enforcement purposes, and therefore, consistent with the reference to the Directive made by Defense Counsel on April 3, 2023. The aggravated assault committed by Defendant John Doe Police Officer I is potentially a crime against the Plaintiff. The fact that the Philadelphia Police Department has decided not to utilize the JNET program available to them for the purpose of identifying the police officer that committed this crime does not render this request a "non-law enforcement" purpose. Police officers are not above the law, and as with civilians, police officers should be subject to the same investigatory techniques available to law enforcement when investigating criminal conduct.

31. Undersigned Counsel has attempted in good faith to resolve the discovery dispute to no end.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's Motion to Compel Application of the Facial Recognition Program Utilized by Philadelphia Police to Identify Defendant Police Officer John Doe I and order the Philadelphia Police Department to use the still photos and video of the incident to identify the supervisor of Defendant Police Officer John Doe I, whose face appears on the video, as well as on the face of Defendant Philadelphia Police Officer John Doe I.

Respectfully submitted,

/s/ Paul J. Hetznecker, Esquire
Paul J. Hetznecker, Esquire
Attorney for Plaintiff, Alfonse Bowman

DATE:    June 15, 2023

## CERTIFICATE OF SERVICE

I, Paul J. Hetznecker, hereby certify that a true and correct copy of this Motion was served on the following via the Court's electronic filing system (ecf):

**Bailey Axe, Esquire**
**Deputy City Solicitor**
**City of Philadelphia – Law Department**
**1515 Arch Street, 14th Floor**
**Philadelphia, PA 19102**

**/s/ Paul J. Hetznecker, Esquire**
Paul J. Hetznecker, Esquire
Attorney for Plaintiff, Alfonse Bowman

DATE:   June 15, 2023